RENDERED: FEBRUARY 17, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0109-MR

JAMES MICHAEL EVERETT                                                    APPELLANT

v.                            APPEAL FROM MARION CIRCUIT COURT
                              HONORABLE KAELIN G. REED, JUDGE
                              ACTION NO. 18-CI-00065

GREGORY PAUL EDELEN; DAWN
RENEE EDELEN; AND GREGORY
PAUL EDELEN AND DAWN RENEE
EDELEN DBA GREG EDELEN
FARM                                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, EASTON, AND McNEILL, JUDGES.

EASTON, JUDGE: Appellant James Michael Everett ("Everett") seeks reversal of

an order of the Marion Circuit Court, entered on January 10, 2022, granting

summary judgment in favor of Appellees Gregory Paul ("Greg") Edelen and his

wife, Dawn Renee Edelen ("Edelens"). A review of the record reveals most of the relevant interaction was between Everett and Greg Edelen.

Everett contends the trial court erred in granting summary judgment and dismissing his bodily injury claim because Everett was the Edelens' employee when he was injured while building a barn on the Edelens' property. Everett further claims the Edelens owed him a heightened standard of care because of his employee status. Having determined the record supports the determination of Everett as an independent contractor as a matter of law based upon the undisputed facts, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The parties agreed the underlying facts are undisputed.[1] The Edelens are residents of Marion County who own and operate a cattle farm. Everett is also a resident of Marion County. Everett has worked for various construction companies. Everett's other employment history included various construction projects, tobacco farming, and other odd jobs. Everett helped with some tobacco farming with Greg Edelen's father years ago.

In March of 2017, the Edelens engaged Everett to build a barn on the Edelens' farm. There was no written agreement. Greg Edelen gave Everett the general location of where the barn was to be built and gave Everett the size and

---

[1] Hearing on motion for summary judgment on December 16, 2021.

dimensions of the barn.  Everett testified that, outside these instructions, Greg Edelen mostly left him alone to build the barn.

Everett brought some of his own tools to use in the construction of the barn.  The Edelens supplied the heavy equipment, including a tractor and posthole digger.  Greg Edelen borrowed a Bobcat[2] for the job which he did not allow anyone but himself to operate.  The Edelens purchased the building materials with Everett determining what would be needed.[3]

At one point early in the process, the Edelens did not like the alignment of the barn.  Greg Edelen had the initial posts pulled and had Everett alter the location of the structure.  Eventually, it appeared Everett would need additional help to complete the barn.  Greg Edelen procured the assistance of family members to help Everett finish construction.

On March 26, 2017, Everett, Greg Edelen, Keith Edelen, Adam Edelen, and Lincoln Hayden were present at the property.  The men attempted to attach A-frame trusses to the barn structure.  Greg Edelen operated the Bobcat to lift trusses up to Everett who affixed the trusses to the barn.  While doing this, Everett stood at the top of the barn structure, approximately twelve feet above the ground.  Everett attempted to slightly move and secure a truss when trusses fell,

---

[2] A compact tractor between the size of a riding lawnmower and a full-size tractor.

[3] Everett Deposition, pg. 60.

and Everett was knocked over. Everett fell to the ground. The Bobcat was not being operated at the time of the fall.

Everett claims his injuries left him with a poor memory of the day of the accident. Everett first tried to seek damages based upon a claim the Edelens did not help him after the fall. When it became clear in discovery his memory on this point was doubtful, Everett abandoned that claim.[4] The Edelens offered immediate medical care, which Everett refused. Only after the Edelens took Everett home did Everett later go to a local hospital for evaluation.

After sustaining his injuries, Everett played no further role in the construction of the barn on the Edelens' property. The Edelens and their family and friends finished the barn without Everett. The Edelens paid Everett $350.00 via check, with a memo line stating, "Labor."

The Edelens moved for summary judgment on the basis that Everett was an independent contractor to whom they owed no duty of care in the performance of his work. Everett opposed this motion, arguing he was an employee of the Edelens, and that the Edelens owed him a duty to provide a safe

---

[4] Because Everett's claim that the Edelens failed to render assistance was not included in his prehearing statement, the claim is waived on appeal. Under the Kentucky Rules of Appellate Procedure ("RAP"), the appellant is limited to the issues raised in the prehearing statement. RAP 22(C)(2) (formerly Kentucky Rule of Civil Procedure 76.03(8)). Everett filed no motion to permit consideration of this claim omitted from the prehearing statement.

work environment, including compliance with safety regulations such as the Kentucky Occupational Safety and Health Act.

## STANDARD OF REVIEW

"The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). Summary judgment is only proper when "it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). In ruling on a motion for summary judgment, the court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Id.* A party opposing a summary judgment motion "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 481 (internal quotation marks and citations omitted). In *Steelvest* the word "'impossible' is used in a practical sense, not in an absolute sense." *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992).

The trial court did not make any findings of fact or state conclusions of law. The trial court is not required to do so in deciding motions for summary judgment. CR[5] 52.01. As summary judgment involves only legal questions if there are no genuine issues of material fact, an appellate court does not defer to the trial court's decision and will review the issue *de novo*. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001). Whether a person is an employee, or an independent contractor is a question of law. *Auslander Properties, LLC v. Nalley*, 558 S.W.3d 457, 463 (Ky. 2018).

## ANALYSIS

Everett argues the trial court erred in granting summary judgment as Everett was the Edelens' employee as a matter of law, and thus, the Edelens owed Everett a heightened standard of care. In contrast, the Edelens argue Everett was an independent contractor to whom they owed no duty of care in the performance of his work.

Kentucky courts have held an "individual is the agent of another if the principal has the power or responsibility to control the method, manner, and details of the agent's work." *Nazar v. Branham*, 291 S.W.3d 599, 606-07 (Ky. 2009). However, if the individual is free to determine how the work is done and the

---

[5] Kentucky Rules of Civil Procedure.

principal cares only about the result, then said individual is an independent contractor. *Id.* at 607.

The traditional common law factors used to determine whether a worker is an employee, or an independent contractor are outlined in Restatement (Second) of Agency § 220(2). *Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 579 (Ky. 2002). These factors are:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business of the employer;
>
> (i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Id.* No one of the aforementioned factors is determinative, and each case where it must be determined whether an individual is an employee or independent contractor should be resolved on its own facts. *Id.* at 580. We will address each of these factors.

Factor (a) considers the extent of control which, by the agreement, the master exercises over the details of the work. As previously stated, there was no written agreement between the parties. Greg Edelen testified he told Everett what was needed and wanted in a barn. Greg Edelen did not instruct Everett on how to build the structure. At the beginning of the process, Greg Edelen was dissatisfied with the alignment of the barn as indicated by posts in the ground. Greg Edelen then had the posts pulled and had Everett relocate the barn site.

Everett argues the restarting of the construction of the barn indicates Greg Edelen controlled the when, where, how, and details of the work. Greg Edelen's restarting of the barn building appears to be dissatisfaction with the initial location of the barn, not with any details of how the barn was to be built by Everett. Greg Edelen testified he did not give instructions to Everett on how to build the barn. Greg Edelen left the details of construction to Everett. A farmer simply telling an independent contractor the single detail of where to place the barn is not the same as controlling how it is built.

Everett testified he squared off the barn himself.  Everett testified that Greg Edelen mostly helped him, and not the other way around.  Greg Edelen testified, "I done what he told me I needed to do or what I could do without screwing something up . . . ."[6]  Greg Edelen also testified he is no carpenter.  He was not able to explain various terms used in putting up and securing the trusses for a barn structure.[7]  Considering all circumstances, factor (a) leans toward Everett's being an independent contractor.

Factor (b) asks whether the one employed is engaged in a distinct occupation or business.  The record shows Everett was not in a distinct occupation or business, except that Everett held himself out as a person who could build anything.  Everett even bragged to Greg Edelen he could build an "underground skyscraper."[8]  Everett does not operate an LLC, corporation, or any other legally recognized business entity.  Everett testified he does odd jobs for different people, stating, "I just, if somebody's got something to do that I'm capable of doing, I do it."  Everett had been a builder since he was a teenager.  This translates to over three decades of construction work.  Everett was an experienced builder, including

---

[6] Greg Edelen Deposition, pg. 36.

[7] Greg Edelen Deposition, pg. 34-35.

[8] Greg Edelen Deposition, pg. 66.

the building of barns. Factor (b) leans toward Everett's being an independent contractor.

Factor (c) of the analysis considers the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision. There is no indication in the record whether barn builders in the applicable community work under the direction of an employer or without supervision. Due to a lack of any evidence on this point, it is neutral.

Factor (d) of the analysis considers the skill required in the particular occupation. Comment *i*. of Restatement (Second) of Agency § 220(2) states, "Unskilled labor is usually performed by those customarily regarded as servants[.]" In the current case, Everett had skill and experience in barn building – experience the Edelens did not have. This work includes needed skills of carpentry. Everett testified he had built ten to fifteen barns as part of a crew and that he had also built a few barns by himself. Factor (d) leans toward Everett's being an independent contractor.

Factor (e) of the analysis asks whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work. Everett brought some of his own tools to use on the construction of the barn; however, the Edelens supplied other equipment, including for example a

posthole digger. Greg Edelen borrowed the Bobcat, which he did not allow anyone but himself to operate. The Edelens purchased the building materials, but what was needed was determined by Everett. Since the Edelens provided most of the tools and building materials, factor (e) leans toward Everett's being an employee of the Edelens.

Factor (f) of the analysis considers the length of time for which the person is employed. Greg Edelen's engagement of Everett to build the barn was a one-time engagement over the course of a few days or weeks with no plans to build another one soon. In other words, this was not employment for a specified period. Rather, it was hiring someone to build a barn, and the job ended when the barn was done. Factor (f) leans toward Everett's being an independent contractor.

Factor (g) of the analysis considers the method of payment to the worker, whether by the time or by the job. Comment *j*. of Restatement (Second) of Agency § 220(2) considers payment by the job to be indicative of an independent contractor. Because the project was not completed, the record may not conclusively answer the question of terms of payment. After his fall, Everett was paid a lump sum of $350.00 for his "labor." Everett testified he was to be paid by

the hour.[9]  Greg Edelen agrees payment was to be by the hour.[10]  Factor (g) leans in favor of Everett's being an employee.

Factor (h) of the analysis considers whether the work is a part of the regular business of the employer.  The Edelens are farmers, and Greg Edelen has another job as a truck driver.[11]  The Edelens may need and use barns, but they are not engaged in the business of building them.  The Edelens needed someone who knew how to build a barn where the Edelens needed one.  They engaged Everett to build the barn based on his skill and experience.  Factor (h) leans toward Everett's being an independent contractor.

Factor (i) of the analysis asks whether the parties believe they are creating the relationship of master and servant.  Everett testified Greg Edelen helped him during the construction.  In other words, Greg Edelen and the other helpers did what Everett told them to do in building the structure.  As previously mentioned, Greg Edelen did not even know the terminology used in the process of placing the trusses.  Again, Greg Edelen testified, "I done what he told me I needed

---

[9] Everett Deposition, pg. 46.

[10] Greg Edelen Deposition, pg. 48.

[11] Greg Edelen Deposition, pg. 5.

to do or what I could do without screwing something up . . . ." Greg Edelen testified he was no carpenter and that he held the "dummy end of the tape."[12]

Significant in this aspect of the analysis is the statement of Everett himself when asked about being an independent contractor. In his deposition, Everett avoided agreement with the phrase "independent contractor" but stated he was his own boss for the projects he undertook.[13] When given the example of building a garage, Everett explained he would submit a bid and be a contractor. There is no clear indication Everett and the Edelens intended a master-servant relationship. Factor (i) leans toward Everett's being an independent contractor.

Factor (j) of the analysis asks whether the principal is or is not in business. Everett asserts Greg Edelen is an employer because he is a businessman who runs a cattle farm from which he derives a profit. However, Everett was not hired to work on the cattle farm; instead, he was hired for the limited scope of building a barn. The Edelens are not in the business of building barns, and thus, factor (j) leans toward Everett's being an independent contractor.

Considering all the factors found in Restatement (Second) of Agency § 220(2), the record shows Everett was an independent contractor, and not an employee of the Edelens. In *Davis v. Perkins*, 620 S.W.2d 331 (Ky. App. 1981),

---

[12] Greg Edelen Deposition, pg. 69.

[13] Everett Deposition, pg. 32-33.

-13-

this Court used the factors set out in Restatement (Second) of Agency § 220(2) in determining that a barn builder injured while rebuilding a tobacco barn was an independent contractor not entitled to workmen's compensation benefits. In *Davis*, the Court stated, "[T]he details of the construction of the barn were left to the workers to determine among themselves, each contributing his particular skills and knowledge, as needed." *Id.* at 334.

Recent appellate decisions have some similarities to the case at hand. In *Auslander*, *supra*, the issue was whether a person hired to cut branches was an employee. The Court observed the property owner "assisted Nalley by providing an extra set of hands to handle the detached branches, but Nalley decided how, when, and where he would cut the branches and where he would stand while doing so. Auslander did not control the manner and method of Nalley's work." *Id.* at 466-67.

In the current case, Everett squared off the barn himself. Greg Edelen mostly helped Everett by providing extra sets of hands. Everett decided where to place the trusses. Everett decided where he stood while he tried to adjust the trusses just before he fell. Greg Edelen did have Everett relocate the placement of the barn before it was built due to dissatisfaction with the barn's alignment, but this does not rise to Edelen controlling the manner and method of Everett's work of actually building a barn. Greg Edelen was still reliant on Everett to build the barn

just as the property owner in *Auslander* relied upon the independent contractor to decide how to accomplish the task of removing branches.

Another recent case is *Dexter v. Hanks*, 577 S.W.3d 789 (Ky. App. 2019). In *Dexter*, a handyman brought a premises liability action against a homeowner after the handyman fell and slipped off the homeowner's roof while he was applying sealer. *Id.* at 790. The homeowner had hired the handyman to seal the metal roof on the homeowner's residence. *Id.* at 791. The handyman had previously performed similar services for the homeowner, including painting the roof of the homeowner's garage. *Id.* The handyman was applying paint and sealer to the roof when he lost his footing and fell twenty feet to the ground. *Id.* at 792.

The trial court in *Dexter* granted summary judgment to the homeowner, determining the handyman to be an independent contractor, and therefore, the homeowner had no duty to provide safety equipment. *Id.* at 793. This Court affirmed the trial court's determination that the handyman was an independent contractor, stating that the handyman was free to determine how best to seal the roof, whereas the homeowner was only concerned with the result. *Id.* at 796.

*Auslander* and *Dexter*, although factually distinguishable, are like the current case as both cases involved property owners who contracted an independent contractor to work on their properties. In both cases, the property

owner left the details of the job to the contractor. In the current case, Greg Edelen left the details of the job of building the barn to Everett.

With the analysis of the factors provided in the Restatement (Second) of Agency § 220(2), as well as the *Davis*, *Auslander*, and *Dexter* cases, this Court agrees the trial court properly granted summary judgment to the Edelens. Everett was an independent contractor.

## CONCLUSION

The Marion Circuit Court's order granting summary judgment entered on January 10, 2022, is AFFIRMED.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Gregory J. Bubalo
Aaron M. Williams
Louisville, Kentucky

BRIEF FOR APPELLEES:

Robert Spragens, Jr.
Lebanon, Kentucky